**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **ROBIN D. MCGREER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Civil Action No. 1:17cv1072** |
| | : | **(AJT/MSN)** |
| **JULIE PARKER, *et al.*** | : | |
| | : | |
| **Defendants.** | : | |

### MEMORANDUM IN SUPPORT OF JULIE PARKER, COLONEL EDWIN C. ROESSLER JR, AND FAIRFAX COUNTY POLICE DEPARTMENT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND FED. R. CIV. P. 12(b)(6)

Defendants Julie Parker (Parker), Colonel Edwin C. Roessler, Jr. (Chief Roessler), and

the Fairfax County Police Department (FCPD), by counsel, have moved the Court to dismiss the

action filed against them herein by the Plaintiff, Robin D. McGreer (McGreer) pursuant to

Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6), and in support thereof, state the following:

### BACKGROUND

On August 30, 2017, McGreer filed a Complaint against Parker, Chief Roessler, the

FCPD, and two unnamed John Doe Defendants in the Fairfax County Circuit Court.  (Doc. 1-1.)[1]

Therein, McGreer asserted a 42 U.S.C. § 1983 claim and three state law claims; defamation *per*

*se*, defamation, and defamation by implication, against all five Defendants.  (Doc. 1-1.)

McGreer's claims are based upon a February 27, 2017, press release issued by unidentified

individuals after McGreer's arrest for felony malicious wounding.  (Doc. 1-1, ¶ 47.)  On

---

[1] Doc. 1-1 is McGreer's Complaint.  Relevant paragraphs in the Complaint are noted within citations.

September 22, 2017, Parker, Chief Roessler, and the FCPD removed the case to this Court pursuant to 28 U.S.C. § 1446(b).

According to McGreer, on November 27, 2016, he was involved in an altercation with Ahmed Mohammed Al-Mufti (Al-Mufti) at Tysons Corner Mall in McLean, Virginia. (Doc. 1-1, ¶¶ 33, 40.) This altercation occurred after McGreer had a conversation with Al-Mufti and his friend, Sikandar Azimi (Azimi) over a "bummed" cigarette. (Doc. 1-1, ¶¶ 39-41.) McGreer contends in his Complaint that he was attacked by Al-Mufti after McGreer disclosed to Al-Mufti that he had been in the military, and that he had been to Afghanistan. (Doc. 1-1, ¶¶ 42-46.)

McGreer was charged with felony malicious wounding pursuant to Va. Code Ann. § 18.2-51, a class 3 felony, and has not yet completed the preliminary hearing phase of the case. (Doc. 1-1, ¶ 135.) On February 27, 2017, a press release was issued that identified McGreer as an individual who had been charged in the incident with a "bias-related attack." (Doc. 1-1, ¶ 47; Doc. 1-1, Ex. C.)[2] According to the press release, this charge came about after an FCPD investigation "revealed McGreer approached the man, started a conversation, and allegedly threatened him using racial insults. An altercation occurred where McGreer allegedly bit the victim in the face and left the scene before officers arrived." (Doc. 1-1, Ex. C.)

---

[2] McGreer makes numerous allegations in the numbered paragraphs of his Complaint pertaining to the press release and the statements contained therein. He also attached the actual press release to his Complaint as Exhibit C. Thus, this Court may refer to the exhibit in lieu of the Complaint to the extent that the two differ. *Davis v. Cole*, 999 F. Supp. 809, 812 (E.D. Va. 1998) ("Where there is a conflict between the bare allegations of a complaint and any exhibit attached pursuant to Rule 10(c), the exhibit prevails." (*citing Fayetteville Inv'rs v. Commercial Builders*, 936 F.2d 1462, 1465 (4th Cir. 1991))).

McGreer claims that Parker, Chief Roessler and the FCPD are liable to him pursuant to 42 U.S.C. §1983, because the press release "polluted the jury pool" and thus deprived him of his right to a fair and impartial jury trial guaranteed by the Fifth and Sixth Amendments.  (Doc. 1-1, ¶ 136.)  McGreer contends that the publication of the press release also constituted defamation *per se*, defamation, and defamation by implication.  (Doc. 1-1, ¶¶ 118, 124, 129.)

## ARGUMENT

### I.   LEGAL STANDARD

Fed. R. Civ. P. 12(b)(2) permits dismissal of an action for lack of personal jurisdiction. *Muniz v. Fairfax Cty. Police Dept.*, 2005 WL 1838326 (E.D. Va. 2005).  "The plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is questioned by the defendant."  *Id.* at *1, *citing Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

On a motion to dismiss under Rule 12(b)(6), the allegations of a complaint are to be liberally construed in favor of the plaintiff.  *Chapin v. Knight-Ridder, Inc.,* 993 F.2d 1087, 1092 (4th Cir. 1993); *Westmoreland v. Brown,* 883 F.Supp. 67, 70 (E.D.Va. 1995).  The court must presume all "factual allegations in the complaint to be true and accord[ ] all reasonable inferences to the non-moving party."  *Id.,* 883 F.Supp. at 70.  The court, however, is not bound to accept as true "conclusory allegations regarding the legal effect of the facts alleged."  *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir. 1995).  Indeed, the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of [liability]."  *Young v. City of Mt. Ranier,* 238 F.3d 567, 577 (4th Cir. 2001).  Were this not the case, "Rule 12(b)(6) would serve no function, for its

purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint." *District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1086 (4th Cir. 1979).

## II. THE FAIRFAX COUNTY POLICE DEPARTMENT IS A *NON SUI JURIS* ENTITY, AND MUST BE DISMISSED AS A PARTY TO THIS ACTION

Fed. R. Civ. P. 17(b) holds that in cases involving a defendant that is not an individual or a corporation, the determination of whether that defendant has the capacity to be sued is based on the law of the state where the court is located.  Thus, as to all of McGreer's claims against the FCPD, Virginia state law regarding personal jurisdiction controls.  Fed. R. Civ. P. 17(b).  In Virginia, "an operating division of a governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued."  *Ross v. Franklin Cty. Dept. of Soc. Servs.*, 186 F. Supp. 3d 526, 534 (W.D. Va. 2016).

The FCPD does not have its own separate legal existence; it exists only as a department of the government of Fairfax County, Virginia.  Va. Code Ann. § 15.2-821 provides, in pertinent part, that a county Board of Supervisors "shall . . . provide for the performance of all the governmental functions of the county and to that end shall provide for and set up all necessary departments of government consistent with the provisions of this chapter."  The FCPD was established by the Fairfax County Board of Supervisors pursuant to this legislative grant of authority.  There are no statutory provisions in Title 15.2 (Counties, Cities, and Towns) of the Code of Virginia that render a local police department, or any department of local government, an entity subject to suit.

4

In *Muniz v. Fairfax Cty. Police Dept.*, 2005 WL 1838326 (E.D. Va. 2005), this Court considered this issue during a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. The Court found that "[t]he Fairfax County Police Department exists as a department of the government of Fairfax County." *Muniz* at *2. The Court further held that "[s]ince the Fairfax County Police Department has no legal existence separate and apart from Fairfax County, and the Code of Virginia does not provide that it can be sued as a separate entity, Fairfax County Police Department is not capable of being sued." *Id.*, citing *Hatcher v. Fairfax Cty. Police Dept.*, NO. 01-1282 (E.D. Va. Oct. 26, 2001). For this reason, McGreer cannot succeed on any of his claims against the FCPD, and the FCPD should be dismissed as a defendant in this matter.

### III.    MCGREER'S CLAIMS AGAINST PARKER AND CHIEF ROESSLER MUST BE DISMISSED

#### A. McGreer's Complaint does not sufficiently allege that either Parker or Chief Roessler took specific action that resulted in damage to McGreer.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *quoting Conley v. Gibson,* 355 U.S. 41, 47 (1957). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, *citing Papasan v. Allain,* 478 U.S. 265, 286 (1986) (stating that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

5

"Two working principles underlie [the Supreme Court's] decision in *Twombly*." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id., citing Twombly*, 550 U.S. at 555. According to the Supreme Court, Fed. R. Civ. P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.,* at 679, *quoting Twombly*, 550 U.S. at 556.

McGreer's Complaint contains no allegation that either Parker of Chief Roessler were present for, or had any direct involvement in, the incident that gave rise to McGreer's malicious wounding charge. Nor does McGreer allege that Parker or Chief Roessler were involved in the criminal investigation that resulted in McGreer's criminal charges. McGreer does not contend that either Parker or Chief Roessler viewed, approved, or published the press release at issue in this case. In fact, not a single paragraph of the Complaint attributes any action to either Parker or Chief Roessler individually; their names each appear only once in the Complaint's numbered paragraphs, which simply identify them as the Director of the FCPD Public Affairs Bureau and the Chief of Police, respectively. (Doc. 1-1, ¶¶ 27, 28.) Instead of abiding by the requirement that he put Parker and Chief Roessler each on notice of the grounds of his claims, McGreer groups all of the Defendants, including the unnamed "John Doe" FCPD employees, as collectively responsible for all of the action that allegedly gives rise to liability. This is insufficient to pass muster pursuant to Fed. R. Civ. P. 8(a)(2). *See generally Iqbal*, 556 U.S. 662; *Twombly*, 550 U.S. 544.

Furthermore, many of the Complaint's paragraphs are devoted to reciting the elements of McGreer's various claims as opposed to alleging facts attributed to either Parker or Chief Roessler which, if true, would give rise to their individual liability to McGreer.  *See Iqbal*, 556 U.S. at 678 (explaining that a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not support a cause of action) *quoting Twombly*, 550 U.S. at 555.  Once the portions of the Complaint that contain these impermissible labels, conclusions, and recitations of causes of action are stripped, what remains are precious few facts, which taken together do not support claims of defamation or constitutional violation, and absolutely none of which are attributed to Parker or Chief Roessler.  As such, McGreer's Complaint must be dismissed.

**B.  McGreer's Complaint does not sufficiently allege a state law claim of defamation *per se* because the language of the press release is not in and of itself actionable.**

To survive a motion to dismiss his state law claim for defamation *per se*, McGreer must sufficiently plead that the press release contained language that was, in and of itself actionable, without proof of special damages.  *Fleming v. Moore*, 221 Va. 884, 889 (1981).  The following words are actionable *per se* at common law:

> "(1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.  (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society.  (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employments.  (4) Those which prejudice such person in his or her profession or trade."

7

*Id.* As it relates to subsection (1), above, the press release asserted that McGreer had been "charged with a bias-related attack," that he had bitten another individual, and that "a warrant was issued for bias-related malicious bodily injury." (Doc. 1-1, ¶ 47; Doc. 1-1, Ex. C.) McGreer admits that he was charged with felony malicious wounding, and therefore the veracity of that portion of the press release is not at issue in this case, and cannot support a defamation claim. (Doc. 1-1, ¶ 135.)[3] As for the remaining factual statements in the press release, they clearly do not qualify as allegations of a crime of moral turpitude or allegations of a contagious disease, as contemplated by subsection (2), above. *See, e.g., Fleming*, 221 Va. at 889 ("Racism, of course, is neither a contagious disease nor a criminal offense for which a person may be indicted and punished.") Thus, McGreer must allege that the allegedly false facts asserted in the press release imputed to him unfitness to perform the duties of his employment, which prejudiced him in his or her profession or trade. *Id.*, at 889-90.

While McGreer's Complaint does assert this legal conclusion at ¶ 122, it is devoid of an allegation that, prior to the issuance of the press release on February 27, 2017, he was actually employed. Further, his Complaint does not allege his employment at a particular trade or profession. It therefore follows that he has not alleged "a nexus between the content of the defamatory statement and the skills or character required to carry out [his] particular occupation."

---

[3] Regardless, if McGreer would contend that the press release falsely depicted the crime for which he was charged, malicious wounding is not a crime of moral turpitude. Therefore, the statement cannot be actionable as defamation *per se*. *See, e.g. Green v. Patten*, 92 Va. Cir. 275, *2 (City of Petersburg, January 12, 2015) (A crime of moral turpitude includes those crimes "involving . . . lying, cheating and stealing." (*citing Tasker v. Commonwealth*, 202 Va. 1019, 1024 (1961))).

*Id.* at 890. McGreer's failure to establish that the press release contained language that would constitute defamation *per se* is fatal to this claim, and it should be dismissed.

### C. McGreer's defamation claims must be dismissed for his failure to allege that the press release contained actionable language, or that the press release was published with the requisite intent.

In addition to the argument, *supra*, that McGreer's defamation *per se* claim fails to allege language sufficient to support the claim, all of McGreer's defamation claims fail because the Complaint does not allege actionable defamation, and it fails to allege with specificity that either Parker or Chief Roessler took any action with the requisite intent.[4] A claim for defamation in Virginia requires a showing of three elements: "1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault*, 290 Va. 83, 91 (2015), *quoting Tharpe v. Saunders*, 285 Va. 476, 480 (2013). McGreer's complaint satisfies the requirement that he allege publication, however, it fails as to both of the remaining elements.

"An 'actionable' statement is both false and defamatory." *Schaecher*, 290 Va. at 91, *citing Tharpe*, 285 Va. at 481. "'[P]ure expressions of opinion' are constitutionally protected and 'cannot form the basis of a defamation action.'" *Id.* at 481, *quoting Williams v. Garraghty*, 249 Va. 224, 233 (1995). "Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion." *Fuste v. Riverside Healthcare Ass'n,*

---

[4] Count III of the Complaint, which McGreer titled "Common Law Defamation by Implication," must be dismissed because this is not a claim separate and distinct from a defamation claim, which is asserted in Count II. In Virginia, there are two methods by which a plaintiff may seek to prove a defamation claim; by proof of a published statement that is false on its face, or, if the statement is "literally true" the plaintiff can still succeed by establishing that the reasonably drawn implication arising from those statements imputes a false fact. *Webb v. Virginian-Pilot Media Cos., LLC*, 287 Va. 84, 89 (2014).

265 Va. 127, 132 (2003).  Furthermore, "'[s]peech that does not contain a provably false factual connotation' is generally considered 'pure expression[ ] of opinion.'" *Tharpe*, 285 Va. at 481, *quoting WJLA–TV v. Levin,* 264 Va. 140, 156 (2002).

The issue of whether a statement alleged to be defamatory is a statement of fact, or a statement of unactionable opinion, is a question of law.  *Levin*, 264 Va. at 156–57; *Tronfeld v. Nationwide Mut. Ins. Co.,* 272 Va. 709, 714 (2006).  In determining whether, as a matter of law, an alleged defamatory statement is a statement of fact or a statement of opinion, the court does "not consider[] whether the statements at issue are true or false, only whether they are capable of being proved true or false."  *Raytheon Tech. Servs. Co. v. Hyland*, 273 Va. 292, 304 (2007).  This analysis requires the court to consider the statement as a whole, and not piecemeal.  *Id.* at 303 ("We do not isolate one portion of the statement at issue from another portion of that statement.").

A fair reading of the press release, not piecemeal, but in its entirety, reveals that the message conveyed to the reader was that McGreer was in an altercation with another man, that the resulting police investigation revealed that he had allegedly bitten the other man in the face, causing a significant wound that required medical attention, and then left the scene, that during the incident, McGreer allegedly made statements to the man that were racial in nature, and that as a result of this alleged behavior, the investigation concluded that McGreer had committed a bias-related crime of malicious wounding, resulting in McGreer's arrest.[5]  Nowhere in the statement is

---

[5] Importantly, while asserting that there are "two sides" to the story of his altercation with Al-Mufti, one of which, his, was not reported in the press release, McGreer admits that he left the area before police arrived on scene, and that he thereafter did not contact the police at any time to report the incident.  (Doc. 1-1, Ex. D.)

it stated, nor is it implied, that McGreer is guilty of the crime, that he is not presumed to be innocent until proven guilty, that he is a savage or violent person, or that he is a racist who hates Muslim people.  (Doc. 1-1, ¶¶ 56-61.)  *See Yeagle v. Collegiate Times*, 255 Va. 293, 297 (1998) ("inferences cannot extend [] statements, by innuendo, beyond what would be the ordinary and common acceptance of the statement.").

The press release contains statements of the type that are not actionable defamation, but are a matter of the speaker's perspective, which are not facts properly the subject of a defamation claim.  *Compare Raytheon Technical Servs. Co. v. Hyland*, 273 Va. 292, 305 (2007) (finding that the phrase "Cynthia is frequently verbose and vocal in her opinions, to a degree that others stop participating in open dialogue" and that the same individual was "unwilling to accept and work with . . . feedback" were matters of the speaker's perspective, and therefore opinion), *with Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 715 (2006) (finding that the statement that attorney "Jay Tronfeld just takes people's money" was capable of disproof, and thus was a fact.) Thus, even if McGreer had properly alleged that Parker or Chief Roessler made the statements, or approved their public release, the content of the press release demonstrates that the release is not actionable defamation, but simply matters stated from the speaker's perspective, upon the conclusion of a three-month police investigation.

McGreer's defamation claims also fail because he has not alleged that they were published with the requisite level of intent.  If the alleged defamatory statement "relates to a matter of public concern," the statement must have been made with actual malice.  *Hugger v. Rutherford Inst.,* 94 Fed. Appx. 162, 166 (4th Cir. 2004).  Whether the statement relates to a matter of public concern must be determined after consideration of the "content, form and

context" of the statement as a whole.  *Connick v. Meyers*, 461 U.S. 138, 147-48 (1983).  It cannot

be reasonably in dispute that the publication of information relating to McGreer's criminal

prosecution for a bias-related malicious wounding is a matter of public concern.  *See, e.g.,*

*Tharp v. Media General, Inc.*, 987 F. Supp. 2d 673, 681 (D. S.C. 2013) ("the public has an

interest in and a right to know of an arrest made in the community for an alleged kidnapping and

alleged sexual assault"), *citing Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,

472 U.S. 749, 759 (1985).  Thus, to survive the instant motion to dismiss, McGreer must allege

that the publication of the press release was accomplished with actual malice.

Actual malice requires a showing by clear and convincing evidence that the allegedly

defamatory statement "was made with knowledge of its falsity or with reckless disregard for the

truth."  *Potter v. The Associated Press*, 2015 WL 4393401, *8 (E.D. Va. 2015), *quoting Gertz v.*

*Robert Welch, Inc.,* 418 U.S. 323, 342 (1974).  "While actual malice may be alleged 'generally,'

the Fourth Circuit does not permit 'conclusory allegation[s]' of malicious intent to survive on a

motion to dismiss."  *Potter* at *8, *quoting Mayfield v. Nat'l Assn. for Stock Car Auto Racing,*

*Inc.,* 674 F.3d 369, 377–78 (4th Cir. 2012).  McGreer's Complaint fails to allege any facts

specific to either Parker or Chief Roessler that would support the conclusion that they took action

related to the press release with actual malice.  His repeated use of legal phrases without

supporting factual support are fatal to his claims.  *See Young v. Cty. of Mt. Ranier*, 238 F. 3d 567,

577 (4th Cir. 2001).  As such, his defamation claims must be dismissed.

**D.  McGreer's Complaint does not sufficiently allege a constitutional violation.**

42 U.S.C. § 1983, is merely a procedural vehicle which permits the assertion of claims

based on the violation of the United States Constitution or federal statutes or regulations.

12

*Albright v. Oliver,* 510 U.S. 266, 271 (1994).  To succeed on a claim brought pursuant to Section 1983, a plaintiff must allege and prove that: (1) the defendant or defendants engaged in conduct which deprived him of a clearly established federal constitutional right; (2) the defendant or defendants acted were acting under color of state law; and (3) the acts of that defendant or defendants proximately caused his damages.  *See Amato v. City of Richmond,* 875 F. Supp. 1124, 1133 (E.D. Va. 1994); *Curtis v. Cuccinelli*, 2013 WL 653287 *3 ("[E]ach named defendant must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against him.").

The constitutional rights that McGreer alleges were violated by the publication of the press release are his Fifth and Sixth Amendment rights to a fair trial and an impartial jury. (Doc. 1-1, ¶¶ 136-137.)  *See U.S. v. Shealey*, 641 F.3d 627, 633 (4th Cir. 2011) (noting the Fifth Amendment right to Due Process associated with the proceedings of a criminal prosecution; *U.S. v. Lindh*, 212 F. Supp. 2d 541, 548 (E.D. Va. 2002) (discussing the Sixth Amendment right to a criminal trial "by an impartial jury.")  The manner in which either the Fifth Amendment or Sixth Amendment right to a fair criminal trial is protected is left within the reasonable discretion of the criminal trial court.  *See, e.g., U.S. v. Bakker*, 925 F.2d 728, 734 (4th Cir. 1991) (recognizing that the proper way to impanel a jury in a case that has received widespread press coverage is through a careful *voir dire* prior to the trial); *U.S. v. Jones*, 542 F.2d 186, 194 (4th Cir. 1976) ("when highly prejudicial information may have been exposed to the jury, the court must ascertain the extent and effect of the infection, and thereafter, in its sound discretion, take appropriate measures to assure a fair trial.").  McGreer admits that he has yet to complete the preliminary hearing stage of his criminal prosecution.  (Doc. 1-1, ¶ 135.)  Thus, he has not yet

reached the jury trial phase of his prosecution, nor has a trial judge attempted to empanel an impartial jury to hear his case.  His claim that, at some unknown point in the future, if he is tried by a jury, that as-of-yet empaneled jury will be so tainted by pretrial publicity of his case that it will constitute a violation of his Fifth and Sixth Amendment rights, is premature at best, and cannot support his claim that his constitutional rights have already been violated.  Furthermore, McGreer's failure, argued herein, to allege that either Chief Roessler or Parker had involvement in the issuance of the press release is fatal to his constitutional claim.  Count IV of the Complaint must therefore be dismissed.

## IV.    MCGREER'S COMPLAINT DOES NOT SUPPORT PUNITIVE DAMAGES

Assuming, *arguendo*, that this case proceeds on any of McGreer's claims, his punitive damages claim must be dismissed for his failure to allege facts that would support a finding that any of the actions attributable to Parker or Chief Roessler were committed with actual malice.  In order to recover punitive damages on a claim of defamation or defamation per se, a plaintiff must allege and prove actual malice.  *Spencer v. Am. Int'l Grp., Inc.,* 2009 WL 47111, *4 (E.D. Va. 2009) (citing *Jordan v. Kollman,* 269 Va. 569, 577 (2005)).  Thus, McGreer's failure to sufficiently plead actual malice associated with the publication of the press release is fatal not only to his defamation claims, but to his claim for punitive damages as well.

### <u>CONCLUSION</u>

Based upon the foregoing, Parker, Chief Roessler, and the FCPD respectfully request that the Court dismiss McGreer's Complaint.

14

Respectfully submitted,

**JULIE PARKER**
**COLONEL EDWIN C. ROESSLER JR.**
**FAIRFAX COUNTY POLICE**
**DEPARTMENT**

**ELIZABETH D. TEARE**
**COUNTY ATTORNEY**

**By:** _____/s/_____
       **Kimberly P. Baucom, Esquire**
       **Senior Assistant County Attorney**
       Virginia State Bar No. 44419
       12000 Government Center Parkway
       Suite 549
       Fairfax, VA   22035-0064
       (703) 324-2421
       (703) 324-2665 fax
       kimberly.baucom@fairfaxcounty.gov
       *Counsel for Defendants Parker, Chief Roessler and FCPD*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of September, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a true copy of the foregoing to the following:

Jonathon A. Moseley, Esquire
3823 Wagon Wheel Lane
Woodbridge, Virginia 22192
contact@jonmoseley.com
Counsel for the Plaintiff

_____/s/_____

Kimberly P. Baucom, Senior Assistant County Attorney
Virginia Bar Number 44419
Attorney for Defendants
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, VA 22035-0064
Phone: 703-324-2421
Fax: 703-324-2665
Kimberly.Baucom@fairfaxcounty.gov

16