**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

**ROBIN McGREER**

    **Plaintiff**

  **v.**

**JULIE PARKER,** *et al.*

     **Defendants.**

Case No. **1:17cv1072-AJT-MSN**

Removed from Fairfax County Circuit
 Court, Fairfax, Virginia,
 CASE NO.  CL-2017-0012065

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS**</u>

**I. INTRODUCTION**

  Plaintiff respectfully submits this Memorandum of Law (points and authorities) in

opposition to Defendants' Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6) motion to

dismiss for failure to state a claim.

**II. STANDARD OF REVIEW**

  As the U.S. Circuit Court for the District of Columbia Circuit explained in *Sparrow v.*

*United Air Lines*, 216 F.3d 1111 (D.C. Cir. 2000) (emphases added):

> The Court went on to hold that the Federal Rules of Civil Procedure do not
> require a claimant to set out in detail the facts upon which he bases his claim.  To
> the contrary, all the Rules require is "a short and plain statement of the claim" that
> will give the defendant fair notice of what the plaintiff's claim is and the grounds
> upon which it rests . . . *Such simplified "notice pleading" is made possible by the*
> *liberal opportunity for discovery* and the other pretrial procedures established by
> the Rules *to disclose more precisely the basis of both claim* and defense and to
> define more narrowly the disputed facts and issues.

  The defense bar now routinely recite that every complaint is conclusory.   The U.S.

Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) clarified the

standard governing the sufficiency of allegations.  Yet *Twombly*, 550 U.S. at 570 merely requires

a complaint to "contain sufficient factual matter, accepted as true, to state a claim for relief that

is 'plausible on its face.'"  ***But as the Court in Twombly made clear, Twombly did not unsettle***

***the well-established practice of taking all facts in the complaint as true, however "doubtful in***

***fact." 550 U.S. at 555.***  Plaintiffs must state enough facts to "nudge their claim across the line

from conceivable to plausible."  550 U.S. at 570.  Similarly, *Ashcroft v. Iqbal*, 129 S.Ct 1937,

1949 (2009) merely requires that allegations must be more than just "consistent with" liability.

***That is, a plaintiff must allege that a defendant*** <u>***actually is***</u> ***liable,*** not that he <u>could</u>

<u>hypothetically be</u> liable.  If all the factual allegations were proven true at trial, it must be

***knowable*** if liability attaches, not remaining indeterminate whether it does or doesn't.

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged.  *Id.,* at 556, 127 S.Ct.
> 1955.  ***The plausibility standard is not akin to a "probability***
> ***requirement," but it asks for more than a sheer possibility that a***
> ***defendant has acted unlawfully***.  *Ibid*.  ***Where a complaint pleads***
> ***facts that are "merely consistent with" a defendant's liability,*** it
> "stops short of the line between possibility and plausibility of
> 'entitlement to relief.' " *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).

*Id.  (emphases added).*

That is, would it still remain undecided or unclear if liability actually attaches to the

Defendants at the close of the evidence if the allegations were proven to be true at trial?

On the contrary, *Twombly* Court reaffirmed that FRCP Rule 8 merely requires a short

plain statement of the claim showing that the pleader is entitled to relief, providing the defendant

with fair notice of what the claim is and the grounds on which it rests.  *Twombly*, 550 U.S. at

555.  The Court emphasized "[w]e do not require heightened pleading of specifics, but only

enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.  And courts

have continued to follow notice pleading.  *Airborne Beepers & Video, Inc.  v. AT&T Mobility, L.L.C.,* 449 F.3d 663, 667 (7th Cir. 2007), ("*Twombly* did not signal a switch to fact-pleading."). *Aktiesekskabet AF 21.  Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 15-16 (D.C.  Cir. 2008) explains:  "*Twombly* leaves the long-standing fundamentals of notice pleading intact."

Furthermore, the complaint must be read "as a whole," and all reasonable inferences must be drawn in the plaintiff's favor. *Matrixx Initiatives, Inc., v. Siracusano*, 131 S. Ct. 1309, 1323 (2011).  A "complaint must be read as a whole in order to assess its true nature." *Connecticut Indem. Co. v. Der Travel Service, Inc.*, 328 F.3d 347 (7th Cir. 2003).

In considering a motion to dismiss under Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to Plaintiff.  *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, 23 L. Ed. 2d 404 (1969). The court must only consider those facts alleged in the complaint when considering such a motion. See *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994), that is additional facts or assertions outside of the Complaint may not be considered.

A federal court must "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the acts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (quoting *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004))).  A complaint should only be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).   "As we have written, a Rule 12(b)(6) motion tests the legal sufficiency of the complaint. Material factual allegations in the complaint are therefore to be taken as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)."

*ACLU Foundation of Southern California v. Barr*, 952 F.2d 457 (D.C. Cir. 1992).

### III.     STATEMENT OF FACTS RELEVANT TO MOTION

There is only set of facts that exist for our present purposes on a Motion to Dismiss --

those alleged in the Complaint. All other assertions are not relevant.  The following facts are

taken as true for the purposes of this motion to dismiss under FRCP Rule 12(b)(6), along with all

inferences reasonably drawn from them in support of the Plaintiff's causes of action.

11.   As a result of the Defendants' defamation, the Plaintiff Robin McGreer has
been turned down for employment opportunities that he was being considered for,
costing him approximately $100,000 per year, repeating year after year.

17.  The Defendants engaged in acts which constitute a wanton and intentional
deviation from their duties that they have been assigned to undertake.

18.  The Defendants through their activities in and through the FCPD Media
Relations Bureau were not required as part of their duties to issue press releases,
certainly not those which are false and/or go far beyond the essential facts.

56.     The Defendants' press release both stated and at the least implied that
Robin McGreer is a racist or bigot and/or that he engaged in a hate crime.

57.  The Defendants' press release both stated and at the least implied that Robin
McGreer hates Muslims.

58.  The Defendants' press release both stated and at the least implied that Robin
McGreer bit the face of the alleged victim Al-Mufti, categorizing that bite as
serious enough to be a malicious assault sending the alleged victim Al-Mufti to
the hospital.

71.     The Defendants knowingly, deliberately, willfully and intentionally
polluted the jury pool in Fairfax County with derogatory and false and defamatory
statements about the Plaintiff portraying the Defendant as already determined to
be guilty.

72.     The press release from the Fairfax County Police Department is
understood by a reasonable person to be intended as strictly factual and expected
to be credible.
73.     The press release from the Fairfax County Police Department is not
understood by reasonable people to be an editorial, opinion, or commentary.

74.     Because of the false statement that Robin McGreer bit the alleged victim

Al-Mufti on the face, as a hate crime, the Defendants' news release was widely republished in the news media.

## IV.   ARGUMENT

Defendants assert various grounds for arguing that the Complaint fails to state a claim upon which relief may be granted which are not always labeled separately or clearly.

### A.   <u>DEFENDANTS VIOLATED DUE PROCESS RIGHTS OF THE PLAINTIFF</u>

The denial of due process is a violation of the Plaintiff's constitutional rights, as well as violation of the Plaintiff's Fifth and Sixth Amendment rights to a fair trial and an impartial jury.

However, on pages 12-14, the Defendants do not actually dispute (not that they admit it but they do not raise any dispute to in this context)  (A) that a constitutional right is implicated and (B) that defendants acted under color of state law as a governmental act.  *See U.S. v. Shealey*, 641 F.3d 627, 633 (4th Cir. 2011) (Fifth Amendment right to Due Process associated with the proceedings of a criminal prosecution; *U.S. v. Lindh*, 212 F. Supp. 2d 541, 548 (E.D. Va. 2002) (discussing the Sixth Amendment right to a criminal trial "by an impartial jury."

Instead, the Defendants argue that the Plaintiff might not have suffered damages because he has not <u>*yet*</u> faced a jury trial leading to an actual conviction by a jury verdict.  Defendants argue that:  To succeed on a claim brought pursuant to Section 1983, a plaintiff must allege and prove that: (1) the defendant or defendants engaged in conduct which deprived him of a clearly established federal constitutional right; (2) the defendant or defendants acted were acting under color of state law; and (3) the acts of that defendant or defendants proximately caused his damages.  *See Amato v. City of Richmond,* 875 F. Supp. 1124, 1133 (E.D. Va. 1994).

However, on a motion to dismiss, all of the factual allegations must be assumed to be true.   That is, the allegations of the Complaint are clear that massive pollution of the jury pool occurred.  The Complaint alleges and documents with exhibits that massive publicity repeating

the Press Release occurred within Fairfax County (the jury pool) as well as worldwide.

The Defendants merely "demur" (in Virginia parlance) that perhaps the admitted publicity might potentially be cured by *voir dire* of the jury.  That is speculation at this point. Worse, that is outside information external to the Complaint and its exhibits.  As alleged, the Complaint alleges that the jury pool has been influenced and that as a result the Plaintiff is deprived of his due process rights, Fifth Amendment rights and Sixth Amendment rights.  The influence of the jury pool by the Fairfax County Police Department is a completed act.

Therefore, to what extent the Plaintiff has been actually damaged is a question of fact. But that the constitutional violation occurred cannot be reasonably doubted.  Courts have consistently held that a colorable constitutional violation gives rise to a showing of irreparable harm. *See Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (a constitutional violation and loss of constitutional protections "'for even minimal periods of time, unquestionably constitutes irreparable injury'") (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)); *see also Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 53 (D.D.C. 2002) (deprivation of constitutional protection "is an undeniably substantial and irreparable harm").  The only issue placed in dispute is to what extent the Plaintiff has been actually injured by it.

Counsel also recognizes that the interference with the due process rights of a criminal defendant has not been extensively litigated, but it should be.  If law enforcement can issue <u>false</u> information about criminal defendants -- in forums where they are likely to be believed by the casual voter (registered voter) -- and strongly influence criminal convictions, few greater constitutional violations in criminal prosecution can be imagined.  If law enforcement's public relations arms (which probably shouldn't exist in the first place) can speak directly to jurors convincing jurors of "facts" that could not be introduced in court as admissible evidence, then all

other constitutional and evidentiary protections become meaningless.  Thus, counsel does argue

for an extension and expansion of constitutional law protecting criminal defendants from _false_

information being addressed to jurors which could not be introduced as admissible in court.

### B.  DEFENDANTS HAD ACTUAL KNOWLEDGE STATEMENT WAS FALSE

The Defendants are in error because the Defendants had _actual knowledge_ -- according to

the allegations of fact -- that their Press Release was false when the libel was published.  The

Defendants are in error because their libel was published  _four months after_ the incidents in

question.  Defendants confuse the date of the incidents on November 27, 2017, with the date of

publication on February 27, 2017.  The Complaint alleges --

87.     The Defendants' statement published to the news media was issued on
February 27, 2017, yet the Defendants admitted that the press release' statements
concerned an incident on November 27, 2016.

88.     As a result, the Defendants admit that by the time they issued the press
release on February 27, 2017, they already knew that their press release was false.

90      The Defendants claimed to have conducted a "subsequent investigation"
between November 27, 2016, and February 27, 2017.

91.     By February 27, 2017, the Defendants and FCPD had seen the
surveillance video from the Tysons Corner mall parking garage showing the
incident in question as well as the 'smart phone' video filmed by the alleged
victim Al-Mufti's friend.

92.     By February 27, 2017, the Defendants and FCPD actually knew that -- as
shown in the videos -- the alleged victim Al-Mufti did not in fact have any
significant cut or bite or other wound to his face at the time that Robin McGreer
departed the area and left the Tysons Corner mall.  No such significant facial
wound appears in the videos, but only a "scratch."

93.     By February 27, 2017, the Defendants and FCPD actually knew that -- as
shown in the videos -- if the alleged victim Al-Mufti had any significant injury to
his face it must have occurred _after_ Robin McGreer left the vicinity, such as by
Al-Mufti falling down and striking a hard object with the side of his face.

And the Complaint further alleges in factual detail:

60.     The Defendants' press release both stated and at the least implied that Robin McGreer caused extremely serious injuries just short of "non-life-threatening."  That is, instead of describing a "minor" cut, the Defendants deceitfully juxtaposed the extreme possibility of "life threatening" injuries to make it appear to the reader that the injuries were extremely serious.

61.     The Defendants' press release both stated and at the least implied that Robin McGreer has already been determined by a "subsequent investigation" to be guilty.  That is, the press release states the core "facts" as beyond dispute, with a conviction as a mere formality.

63.     The Defendants' press release both stated and at the least implied that Robin McGreer attacked the alleged victim Al-Mufti without justification.

64.     The Defendants' press release both stated and at the least implied that Robin McGreer initiated an attack upon the alleged victim Al-Mufti and/or was the aggressor.

69.     The Defendants' press release both stated and at the least implied that Robin McGreer is a racist or bigot and/or that he engaged in a hate crime.

70.     Read in context the Defendants' press release communicated that Robin McGreer actually committed the acts mentioned -- that he was the aggressor, that he caused a very serious facial wound by biting an innocent person's face, that he was the aggressor, and that he violently and savagely attacked the alleged victim Al-Mufti without legal justification (self defense).

94.     Yet by February 27, 2017, the Defendants actually knew from the surveillance and smart phone videos that the alleged victim Al-Mufti showed no significant cut, bite, or wound to his face up until the time that Robin McGreer left the area and left the Tysons Corner mall.

95.     Later photographs show a cut on one side of the alleged victim's face just below the horizontal level of his eye, where the head and face are flat and the body does not present any protruding shape to be able to bite such as a shape that sticks out from a flat area of the head.

101.     Furthermore, describing the events on November 27, 2017, the Defendants published on February 27, 2017, "The subsequent investigation revealed McGreer approached the man, started a conversation, and allegedly threatened him using racial insults."

102.     That is, the Defendants stated or at least implied that *it is actually true* -- that is revealed by a police investigation -- that "McGreer ...  threatened him using racial insults."  Although the Defendants threw in the word "allegedly" they tied that to the results of an investigation indicating a credible, methodical

determination of the facts.

103.    However, by February 27, 2017, the Defendants and FCPD actually knew that -- as shown in the videos -- the alleged victim Al-Mufti actually attacked Robin McGreer and continued to follow, berate, insult, and attack Robin McGreer while McGreer sought to leave the area and avoid the alleged victim Al-Mufti's violence against him.

105.    By February 27, 2017, the Defendants and FCPD actually knew that -- as shown in the videos -- the alleged victim Al-Mufti announced on the smart phone video while taunting and threatening Robin McGreer "I've beat you many times and all you did was bite me?"

106.    Thus, the Defendants knew that the alleged victim Al-Mufti was the aggressor and was seeking to incite further violent interaction with Robin McGreer.

Defendants concede on Page 12 of their Memorandum of Law:  "Actual malice requires a showing by clear and convincing evidence that the allegedly defamatory statement "was made with knowledge of its falsity or with reckless disregard for the truth." *Potter v. The Associated Press*, 2015 WL 4393401, *8 (E.D. Va. 2015), *quoting Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974)."  Here, the Complaint factually alleges that the Press Release was made with actual knowledge of its falsehood, because it asserts the results of the "subsequent investigation."

C.  **DEFENDANTS EITHER KNEW THE CRIMINAL INVESTIGATION OR KNEW NOTHING AT ALL**

Defendants further argue that while the Defendants claim to have a factual basis for their Press Release -- again four (4) months <u>after</u> the incidents in question -- they might not have known that the investigation had already proven the Press Release to be false.

This ignores the allegation that the Press Release was not initiated, written, or published until *<u>after</u>* the "subsequent investigation" was complete. Therefore, the Defendants would have to have no factual basis for their Press Release, publicizing it by "reckless disregard for the truth." *Potter.*  By February 27, 2017, the Defendants had to be basing the press release on the results of

the "subsequent investigation" -- which the Press Release references -- not the original incident.

**D. DEFENDANTS MADE LIBELOUS STATEMENTS THAT ARE NOT OPINION**

The Defendants seek to argue on pages 9-10 of their Memorandum of Law in Support of their Demurrer the usual excuse for defamation that "'[P]ure expressions of opinion' are constitutionally protected and 'cannot form the basis of a defamation action.'" *Id.* at 481, *quoting Williams v. Garraghty,* 249 Va. 224, 233 (1995). Defendants similarly argue that "'[s]peech that does not contain a provably false factual connotation' is generally considered 'pure expression[ ] of opinion.'" *Tharpe*, 285 Va. at 481, *quoting WJLA–TV v. Levin,* 264 Va. 140, 156 (2002).

As alleged in the Complaint, official Press Releases by the Fairfax County Police Department and its employees are not opinion or commentary. The Complaint alleged:

> 72. The press release from the Fairfax County Police Department is understood by a reasonable person to be intended as strictly factual and expected to be credible.

> 73. The press release from the Fairfax County Police Department is not understood by reasonable people to be an editorial, opinion, or commentary.

A statement is actionably false if it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991). Inaccuracy in a quotation is not actionable "unless the alteration results in a material change in the meaning conveyed by the statement." *Id.* On the other hand, "an exact quotation out of context can distort meaning, although the speaker did use each reported word." *Id.* at 515. Thus, falsity is determined not only by the words in a purported quotation, but also "by reference to the meaning a statement conveys to a reasonable reader." *Id.*

There are no opinions or commentary contained within the Press Release, in contrast to a case in which the Supreme Court of Virginia recently addressed a very similar case in *Lewis v. Kei*, 281 Va. 715, 708 S.E.2d 884 (Va. 2011):

9

Lewis alleged that on August 8, 2008, Kei published a notice on the County's website which was titled "Arrest made in Prince George Abduction Case." The notice identified Lewis by name, contained a photograph of Lewis, and represented that Lewis had been "arrested in connection with the abduction of a 10 year old Prince George child that occurred last Friday." The notice remained on the website for several months after the charge against Lewis had been expunged.

*Lewis v.  Kei*, 281 Va. at 720, 708 S.E.2d at 888.   And *Lewis v.  Kei* further teaches that:

"In determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement. Rather, a court must consider the statement as a whole." *Id.* (internal citations omitted). In other words, in considering whether a plaintiff has adequately pled a cause of action for defamation, the court must evaluate all of the statements attributed to the defendant and determine whether, taken as a whole, a jury could find that defendant knew or should have known that the factual elements of the statements were false and defamatory.

*Lewis v.  Kei*, 281 Va. at 725, 708 S.E.2d at 891.  And further:

When considered individually, many of the statements attributed to Kei cannot sustain a claim of defamation because they are objectively true when considered in the light of other allegations within the amended complaint. For example, it was objectively true, at least at the time Kei was alleged to have made the statements, that Lewis had been arrested in connection with an alleged abduction.[3] ***However, other statements attributed to Kei, such as the assertion that Lewis "approached" T.H., are subject to being proven false, and a jury could find that Kei was negligent in making these statements based solely upon Williams' 911 report without conducting any follow-up investigation.***

*Lewis v.  Kei*, 281 Va. at 725, 708 S.E.2d at 892 *(emphasis added).*  And in concluding:

Because the amended complaint was adequate to state a basis upon which, if proven to the satisfaction of the jury, Lewis could assert a claim for defamation against Kei, we hold that the circuit erred in sustaining Kei's demurrer as to that claim.

*Id.*

Here, the claim that the Plaintiff was charged with a bias-related crime is either

objectively true or it is objectively false.  It is not an opinion.  Either he was or he wasn't.

Furthermore, none of the other assertions are opinion or subjective or commentary.  A statement

is not actionable as defamatory only if it cannot be objectively verified as false or cannot

"**reasonably be interpreted as stating actual facts**" about the plaintiff.  *Milkovich v. Lorain*

*Journal Co.*, 497 U.S. 1, 18-20 (1990).

Even a statement of opinion may become actionable if it has an explicit or implicit

factual foundation and is, therefore, objectively verifiable. *Moldea v. New York Times Co.,* 22

F.3d 310, 313 (D.C. Cir. 1994) (statements of opinion actionable  "if they imply a provable false

fact, or rely upon stated facts that are provably false"). Moreover, mixed statements of opinion

and fact are actionable. *Harper, James and Bray, 2 The Law of Torts 2d, § 5.8 at 66-68;*

*Restatement of Torts 2d § 566 (1977).*  Here, there are no expressions of opinion, commentary, or

subjective characterization in the Press Release.  However, even if there were, the Press Release

clearly conveys the existence of objectively-true facts that can be provably false or true,

including that as a result of a "subsequent investigation" between November 27, 2016, and

February 27, 2017, it is actually true that (a) the alleged victim Al-Mufti had a significant facial

wound, (b) before Robin McGreer left the vicinity (c) Robin McGreer attacked the alleged

victim Al-Mufti (d) without justification and (e) initiated an attack and/or was the aggressor (f)

Robin McGreer is a racist or bigot and/or that he engaged in a hate crime, (g) Robin McGreer

acted without legal justification (e.g., self defense), (h) the victim had a large semi-circular cut

because Robin McGreer bit his face when that would be medically and physically impossible

(for the entire curve of one's jaw including back teeth all the way around the curve of one's jaw

to all bite in to someone's flat face), and (i) McGreer threatened the victim with racial insults.

These are objectively true or false assertions which can be provably false, and are.

## E.  ACTIONABLE STATEMENTS ARE FOR THE JURY TO DECIDE

"[A] jury must determine whether these impressions were actually conveyed, whether

they were false, and whether the letters were motivated by actual malice." *White v. Fraternal Order of Police*, 909 F.2d 512, 525 (D.C. Cir. 1990); *see also Dunn v. Gannett New York Newspapers, Inc.*, 833 F.2d 446, 449 (3d Cir. 1987) ("if the language at issue is 'capable of both a defamatory and a nondefamatory meaning, there exists a question of fact for the jury.'").

Whether there was a clear and convincing showing of constitutional malice is also a matter for the jury to decide. Further, where Defendants claim that they did not knowingly post false and defamatory information about Plaintiff, it is up to the jury to determine whether these Defendants are credible. *See St. Amant* v. Thompson, 390 U.S. 727, 732 (1968) ("The finder of fact must determine whether the publication was indeed made in good faith.").

### F. <u>COMPLAINT ATTRIBUTES THE DEFAMATION TO NAMED DEFENDANTS</u>

In various places the Defendants argue that liability has not been alleged against Defendants Julie Parker and Chief Edwin Roessler for lack of alleging their individual actions.

On the contrary, although discovery may reveal more detail, the Press Release is explicitly attributed to the "**FCPD Media Relations Bureau**" and to "**Fairfax County Police Department News:  Official News and Information from the Fairfax County Police Department.**"  Unquestionably, Chief Roessler is in charge of the Fairfax County Police Department and Julie Parker is in charge specifically of the FCPD Media Relations Bureau of the Fairfax County Police Department.  The Press Release was not issued under the name of an individual but under Roessler's and Parker's authority.  Thus on its face the statements of the Press Release were made under the authority of Chief Roessler and Public Affairs Bureau Director Parker.  The statements were not attributed to any other person as an author.

27.  The Defendant JULIE PARKER  is employed as Director, Public Affairs Bureau, Fairfax County Police Department, 4100 Chain Bridge Road, Fairfax, Virginia 22030, who directly or indirectly by her directions caused the publication of the February 27, 2017, press release.

28.  The Defendant COLONEL EDWIN C. ROESSLER JR. is employed as Chief of Police, Fairfax County Police Department, 4100 Chain Bridge Road, Fairfax, Virginia 22030, who directly or indirectly by his directions caused the publication of the February 27, 2017, press release.

47.  On February 27, 2017, the Defendants published to the news media and the general public, the following press release, a copy of which is attached as Exhibit C, hereto:        * * *

The standard on a FRCP Rule 12(b)(6) motion to dismiss requires that the factual allegations of the Complaint be taken as true along with all inferences reasonably drawn therefrom.  The factual allegations of the Complaint establish that Chief Roessler and Director Parker are responsible for the libelous statements.  They are both in charge of the "**FCPD Media Relations Bureau**" and also in charge of "**Fairfax County Police Department News:  Official News and Information from the Fairfax County Police Department.**"  They cannot disclaim their responsibility for the published libel, particularly where no one else is identified as author. In fact, if a specific employee is sued, the Defendants would doubtless seek to substitute themselves in place of an employee under their supervision.

### G.  <u>FOR THE CLAIM OF *PER SE* DEFAMATION, PLAINTIFF ALLEGES LIBEL OF RACIST INTENT</u>

Relating only to the Plaintiff's claim that the libel qualifies as *per se* defamation, subsequent to the filing of this lawsuit, the Commonwealth Attorney for Fairfax County, Virginia dropped the charges against the Plaintiff Robin McGreer by *nolle prosse* action. Therefore, the Plaintiff is not currently being prosecuted for any crime at all.

However, the libel against the Plaintiff does qualify as defamation *per se*.  Even if the Plaintiff were being prosecuted for malicious wounding by biting, the claim of racism and bigotry is a separate and distinct libel against the Plaintiff.  There is a distinct difference between two men getting in a physical fight (which has been a common type of event throughout history

13

of little note) and the Plaintiff being charged with a "biased-related crime" (which he never was).

The Defendants rely upon the proposition in *Fleming*, 221 Va. at 889 ("Racism, of course, is neither a contagious disease nor a criminal offense for which a person may be indicted and punished.")  But the Press Release alleges that arrested (which he was in fact not) charged with a bias-related *crime* -- not just holding a private opinion -- for which "a person may be indicted and punished."  The Press Release claims that Plaintiff was arrested for a "hate crime."

Contrary to the argument of the Defendants, Va. Code 18.2-57 transforms a Class 1 Misdemeanor into a Class 6 Felony with a mandatory minimum imprisonment of at least 30 days when an assault and battery is motivated by race.  Racial motivation is a crime, a different crime:

> A. Any person who commits a simple assault or assault and battery is guilty of a Class 1 misdemeanor, and if the person intentionally selects the person against whom a simple assault is committed because of his race, religious conviction, color or national origin, the penalty upon conviction shall include a term of confinement of at least six months, 30 days of which shall be a mandatory minimum term of confinement.

> B. However, if a person intentionally selects the person against whom an assault and battery resulting in bodily injury is committed because of his race, religious conviction, color or national origin, the person is guilty of a Class 6 felony, and the penalty upon conviction shall include a term of confinement of at least six months, 30 days of which shall be a mandatory minimum term of confinement.
>
> * * *

Thus the libel that the Plaintiff was arrested for a "bias-related crime" is the difference between a Class 1 Misdemeanor and a Class 6 Felony with a 30 day mandatory minimum jail term actually served and a minimum sentence of 6 months in jail.

Virginia's Supreme Court has explained:

> In addition to proving that Kei knew or should have known that these statements concerning Lewis were false, to be defamatory they also must "concern[ ] and harm[ ] [Lewis] or [his] reputation." *Hyland,* 277 Va. at 46, 670 S.E.2d at 750. The false [281 Va. 727] accusation of the commission of a criminal act generally is sufficient to establish an injury to the plaintiff's reputation. *See,*

14

> *e.g., WJLA–TV v. Levin,* 264 Va. 140, 153, 564 S.E.2d 383, 390–91 (2002).
> Indeed, an action for defamation based upon an accusation of criminal conduct
> may be maintained even when the plaintiff actually has been charged with the
> offense, entered a plea of no contest, and is convicted and sentenced for the crime.
> *Parson v. Carroll,* 272 Va. 560, 566, 636 S.E.2d 452, 455 (2006). Whether, and if
> so to what extent, a false accusation has injured the plaintiff or his reputation
> generally is a matter for the jury. We hold that the allegations of the amended
> complaint adequately allege an injury to Lewis' reputation arising from Kei's
> statements.

*Lewis v.  Kei,*

## H.  **DEFENDANT'S STATEMENTS ARE PER SE DEFAMATORY**

The Defendants dispute whether the libel, as alleged, qualifies as *per se* defamation on

the grounds that a bias-related crime is not a crime of moral turpitude.  However,

> In characterizing misdemeanors for the purpose of determining whether they
> may serve as the basis for impeachment of witnesses, we have defined a
> crime involving moral turpitude as " 'an act of baseness, vileness, or
> depravity in the private and social duties which a man owes to his fellow
> man, or to society in general, contrary to the accepted and customary rule of
> right and duty between man and man.' " *Tasker v. Commonwealth,* 202 Va.
> 1019 1024, 121 S.E.2d 459, 463 (1961) (quoting *Parr v. Commonwealth*, 198
> Va. 721, 724, 96 S.E.2d 160, 163 (1957))

*Great Coastal Exp., Inc. v. Ellington*, 334 S.E.2d 846, 230 Va. 142 (Va., 1985)

Here, the libel that the Plaintiff engaged in a race-based, bias-related crime or "hate

crime" qualifies as moral turpitude where Virginia statutes such as Va. Code 18.2-57(B)

separately makes such a "hate crime" a felony as opposed to a misdemeanor because it is racially

motivated.  The libel accuses of the Plaintiff of " 'an act of baseness, vileness, or depravity in the

private and social duties which a man owes to his fellow man, or to society in general, contrary

to the accepted and customary rule of right and duty between man and man.' "

Furthermore, the Defendants appear to argue that Plaintiff is charged only with a

misdemeanor, whereas accusation of a felony would be defamation *per se*.  But the libel would

make Plaintiff guilty of a felony under the enhancement of Va. Code 18.2-57(B).

## I.  **ACTUAL MALICE EXISTS**

The Complaint alleges actual knowledge, because the Defendants actually knew that their statements were false by the time they were published.

> A finding of actual malice requires that the statement be made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964); Gazette, Inc. v. Harris, 229 Va. at 8, 325 S.E.2d at 721. "A 'reckless disregard' for the truth ... requires more than a departure from reasonably prudent conduct." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S.Ct. 2678 2696, 105 L.Ed.2d 562 (1989). Instead, the evidence must establish that the defendant had a high degree of awareness of probable falsity. Id. Unless the defendant had such an awareness, its failure to investigate before publishing is not sufficient to establish a reckless disregard for the truth. Id. [245 Va. 325] Further, without proof of falsity, there can be no recovery for defamation. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776, 106 S.Ct. 1558 1563, 89 L.Ed.2d 783 (1986).

*Shenandoah Pub. House, Inc. v. Gunter*, 427 S.E.2d 370, 245 Va. 320 (Va., 1993)

In proving constitutional malice, a plaintiff may use evidence of all of Defendants' acts in order to establish that constitutional malice existed. *Goldwater v. Ginzburg***, 414 F.2d 324, 342 (2d Cir. 1969) ("the court properly instructed the jurors that they should consider all the evidence concerning appellants' acts and conduct in publishing Fact in deliberating upon whether Defendants published with actual malice"); *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 668 (1989). In *Harte-Hanks*, the U.S. Supreme Court held that "it is clear that the conclusion concerning the newspaper's departure from accepted standards ***and the evidence of motive*** were merely supportive of the court's ultimate conclusion that the record "demonstrated a reckless disregard as to the truth or falsity of [defendant]'s allegations and thus provided clear and convincing proof of 'actual malice' as found by the jury. Although courts must be careful not to place too much reliance on such factors, ***a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence and it cannot be said that evidence concerning motive***

*or care never bears any relation to the actual malice inquiry*." *Harte-Hanks*, 491 U.S. at 668 *(internal citations omitted)(emphases added).*

 "[M]ost authorities suggest that a failure to retract, in conjunction with other circumstances, may be used to establish the requisite level of [constitutional] malice." John C. Martin, Comment, The Role of Retraction in Defamation Suits, 1993 U. Chi. Legal F. 293, 295 (1993); accord, e.g., *Tavoulareas v. Piro*, 817 F.2d 762, 794, 260 U.S. App. D.C. 39 (D.C. Cir. 1987) (*en banc*) (refusal to retract can be evidence of actual malice) Restatement (Second) of Torts § 580A, cmt. d (1977) ("Under certain circumstances evidence [of a refusal to retract a statement after it has been demonstrated to be false] . . . might be relevant in showing recklessness at the time the statement was published.")*(emphasis added).*

The Plaintiff has not sought or acquired any position of public power or influence which would give him the ability to protect himself apart from the Courts within the meaning of *New York Times v. Sullivan*, 376 U.S. 254 (1964) or its progeny.

## J. PUNITIVE DAMAGES CLAIMED FOR ACTUAL MALICE

Because the Complaint alleges actual malice in the sense that the Defendants had actual knowledge that their statements were false before making those statements, the Complaint claims punitive damages.  That claim is proper because actual malice has been pled in the Complaint.

### V.     CONCLUSION

The Court should deny Defendants' motions to dismiss.

October 22, 2017                                        RESPECTFULLY SUBMITTED,

17

_____
Jonathon A. Moseley (VSB No. 41058)
3823 Wagon Wheel Lane
Woodbridge, Virginia  22192
(703) 656-1230 (telephone)
(703) 783-0449 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss will be delivered electronically on October 23, 2017, to counsel for Defendants through the Electronic Case Filing system.

**Kimberly P. Baucom, Esquire**
**Senior Assistant County Attorney**
Virginia State Bar No. 44419
12000 Government Center Parkway
Suite 549
Fairfax, VA 22035-0064
(703) 324-2421
(703) 324-2665 fax
kimberly.baucom@fairfaxcounty.gov
_Counsel for Defendants Parker, Chief Roessler and FCPD_

_____
Jonathon Moseley, Esq.